IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES EAST, LP,<br><br>Defendant. | CIVIL ACTION NO.: 5:22-CV-00252<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This action is filed pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Ikia Townsend ("Ms. Townsend"), who was adversely affected by such practices. Plaintiff Equal Employment Opportunity Commission (the "Commission") alleges that Defendant, Wal-Mart Stores East, LP ("Defendant"), violated the ADA when it failed to provide a reasonable accommodation for Ms. Townsend, refused to allow her to work without a full medical release, and discharged her because of her disability. The Commission further alleges that Defendant retaliated against Ms. Townsend for opposing unlawful conduct when it terminated her employment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 107(a) of the Americans

1

with Disabilities Act of 1990, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(l) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina, Western Division.

## PARTIES

4. The Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(l) and (3).

5. At all relevant times, Defendant, a Delaware corporation, operated a chain of hypermarkets, discount department stores, grocery stores, and distribution centers in North Carolina, including a distribution center in Hope Mills, North Carolina (the "Facility").

6. At all relevant times, Defendant has continuously done business in the State of North Carolina and in Cumberland County, North Carolina and has continuously maintained at least fifteen (15) employees.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

8. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

9. More than thirty (30) days prior to the institution of this lawsuit, Ms. Townsend filed a charge with the Commission alleging violations of the ADA by Defendant. Defendant responded to Ms. Townsend's charge and participated in all aspects of the Commission's administrative investigation.

10. By letter dated November 4, 2021, the Commission notified Defendant of the determination that the Commission had reasonable cause to believe that Defendant violated the ADA. The Commission invited Defendant to engage in the conciliation process to attempt to reach an agreement that would end the unlawful employment practices and provide Ms. Townsend with appropriate relief.

11. The Parties engaged in conciliation but were unable to reach an agreement acceptable to the Commission.

12. By letter dated March 23, 2022, the Commission notified Defendant that conciliation had failed.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14. Ms. Townsend is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

15. Ms. Townsend was diagnosed with ulnar neuropathy in 2017, a condition that causes nerve damage, muscle loss, and severe pain in Ms. Townsend's right arm, wrist, and hand. The condition also causes "ulnar claw hand" wherein the fourth and fifth fingers on Ms. Townsend's right hand are paralyzed and unable to be used or extended.

16. Ms. Townsend has undergone three surgical procedures related to the ulnar neuropathy.

17. Ms. Townsend's ulnar neuropathy substantially limits her ability to lift, push, pull or grip.

18. Ms. Townsend began working for Defendant as a Unloader at the Facility on or about April 1, 2019.

19. As a Unloader, Ms. Townsend unloaded boxes delivered to the Facility, either by hand or by using a forklift.

20. At all relevant times, Ms. Townsend was qualified to perform the essential functions of her job with or without reasonable accommodation.

21. At all relevant times, Ms. Townsend performed her job in a manner that met Defendant's legitimate job performance expectations.

22. At all relevant times, Defendant regarded Ms. Townsend as disabled.

## COUNT I:
### Failure to Accommodate in Violation of the ADA

23. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 22 above.

24. From around April 19, 2019 until around July 2, 2019, Defendant engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12113, by failing to provide reasonable accommodation to Ms. Townsend for her disability.

25. On or about April 19, 2019, Ms. Townsend notified her immediate supervisor ("Supervisor 1") that she was experiencing severe pain in her right hand and wrist related to her disability and requested permission to "clock out" for the remainder of her shift.

26. Supervisor 1 gave Ms. Townsend permission to leave the Facility and suggested

she submit a request for a medical leave of absence through Defendant's third-party provider (the "Provider") to avoid accrual of attendance points because of the absence.

27. Ms. Townsend contacted the Provider, disclosed her disability, and requested a reasonable accommodation of intermittent leave.

28. On or about April 23, 2019, the Provider mailed Ms. Townsend a letter denying her request for intermittent leave pursuant to the Family and Medical Leave Act.

29. On or about April 25, 2019, Ms. Townsend contacted the Provider about the denial of her request for accommodation and was transferred to the "Accommodation Services Center."

30. Ms. Townsend again disclosed her disability and requested two additional accommodations, periodic breaks and a reduction in the amount of time spent using the forklift.

31. Ms. Townsend worked her normally scheduled shifts on April 26, April 30, and May 1, 2019.

32. On May 1, 2019, Ms. Townsend received a phone call from her second-line supervisor ("Supervisor 2"). Supervisor 2 stated he was aware of her accommodation request and instructed her not to return to work on May 2, 2019.

33. On May 2, 2019, Ms. Townsend received a phone call from Supervisor 2 and the Human Resources Operations Manager ("Human Resources Manager 1") who told Ms. Townsend that there were no accommodations available at the Facility and that she could not return to work unless she obtained a full medical release with no restrictions.

34. That evening, Human Resources Manager 1 emailed Ms. Townsend and confirmed that she would need a full medical release in order to return to the Facility.

35. Between May 2, 2019 and June 14, 2019, Ms. Townsend attempted to secure a full medical release from her health care providers.

36. Ms. Townsend's health care providers would not provide her with a full medical release without restriction because of her disability.

37. On or about June 14, 2019, Ms. Townsend emailed Human Resources Manager 1 asking what documentation she needed in order to return to the Facility.

38. Human Resources Manager 1 responded that Ms. Townsend needed a note from her health care provider stating she could perform all functions of her job without any limitations or restrictions.

39. On or about June 28, 2019, Ms. Townsend's third-line supervisor ("Supervisor 3") called her in response to a complaint she had filed with Defendant's Office of Global Ethics.

40. Ms. Townsend disclosed her disability to Supervisor 3, stated she had requested reasonable accommodations, and explained that she had not been allowed to return to the Facility since May 1, 2019.

41. Supervisor 3 confirmed that Ms. Townsend was still employed by Defendant and asked if she would be interested in being reassigned to a different position at one of Defendant's other facilities.

42. Supervisor 3 asked Ms. Townsend to bring a note from her health care provider with a list of medical restrictions.

43. Ms. Townsend stated she would be interested in a different position and would bring in the note after a medical appointment on July 3, 2019.

44. Four days later, on July 2, 2019 - the day before Ms. Townsend was to submit a list of her medical restrictions, Defendant terminated her employment.

45. Defendant failed to provide a reasonable accommodation to Ms. Townsend, a qualified individual with a disability.

6

46. Defendant failed to engage in the interactive process with Ms. Townsend.

47. The practices complained of above are unlawful and in violation of the ADA.

48. The practices complained of above have deprived Ms. Townsend of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disability.

49. The practices complained of above were intentional.

50. The practices complained of above were conducted with malice or with reckless indifference to the federally protected rights of Ms. Townsend.

51. As a direct and proximate result of Defendant's violation of the ADA, Ms. Townsend suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## COUNT II:
### Disability Discrimination in Violation of the ADA

52. The Commission re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 51 above.

53. Defendant has engaged in unlawful employment practices at the Facility, in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112, including but not limited to Section 102(a) and (b)(5)(B) of Title I of the ADA, 42 U.S.C. § 12112(a) and (b)(5)(B), by terminating Ms. Townsend's employment because of her disability.

54. Between May 2, 2019 and July 2, 2019, Defendant discriminated against Ms. Townsend because of her disability by refusing to allow her to work.

55. On or about July 2, 2019, Defendant discriminated against Ms. Townsend by terminating her employment because she requested a reasonable accommodation for her disability.

56. On or about July 2, 2019, Defendant discriminated against Ms. Townsend by

terminating her employment because she was not able to obtain a full medical release to return to work because of her disability.

57. The practices complained of above are unlawful and in violation of the ADA.

58. The practices complained of above have deprived Ms. Townsend of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disability.

59. The practices complained of were intentional.

60. The practices complained of were done with malice or with reckless indifference to the federally protected rights of Ms. Townsend.

61. As a direct and proximate result of Defendant's unlawful conduct, Ms. Townsend suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

### COUNT III:
### 100% Healed Policy and/or Practice in Violation of the ADA

62. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 61 above.

63. Policies and/or practices that employees must be 100% healed before they can return to work from medical leave are against public policy and violate the ADA.

64. Defendant maintains a 100% healed policy and/or practice.

65. Defendant applied the 100% healed policy and/or practice to Ms. Townsend, thereby depriving her of the right to return to work with a reasonable accommodation and interfering with her statutory rights under the ADA.

66. The practices complained of above are unlawful and in violation of the ADA.

67. The practices complained of above have deprived Ms. Townsend of equal

employment opportunities and have otherwise adversely affected her status as an employee because of her disability.

68. The practices complained of above were intentional.

69. The practices complained of above were conducted with malice or with reckless indifference to the federally protected rights of Ms. Townsend.

70. As a direct and proximate result of Defendant's unlawful conduct, Ms. Townsend suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## COUNT IV:
### Retaliation in Violation of the ADA

71. The Commission re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 70 above.

72. Beginning as early as May 1, 2019, Defendant engaged in unlawful employment practices in violation of the ADA, 42 U.S.C. § 12203, by retaliating against Ms. Townsend for engaging in protected conduct.

73. On or about April 19, 2019 and April 25, 2019, Ms. Townsend engaged in statutorily protected conduct when she requested reasonable accommodation.

74. On or about May 1, 2019, Supervisor 2 informed Ms. Townsend that he had learned she had requested reasonable accommodation and should not return to the Facility on May 2, 2019.

75. On or about May 2, 2019, Human Resources Manager 1 told Ms. Townsend she could not return to the Facility until she received a full medical release from her health care provider.

76. Defendant refused to allow Ms. Townsend to return to the Facility after May 1, 2019.

77. These adverse actions were a direct result of Ms. Townsend engaging in protected conduct on April 19, 2019 and April 25, 2019.

78. On or about June 23, 2019, Ms. Townsend again engaged in statutorily protected conduct when she filed a complaint with Defendant's Office of Global Ethics stating that Human Resources Manager 1 was discriminating against her and not allowing her to return to the Facility without a full medical release.

79. On or about June 28, 2019, Supervisor 3 called Ms. Townsend about the complaint.

80. Supervisor 3 stated he would speak to Human Resources Manager 1 when she returned from vacation on July 2, 2019.

81. On July 2, 2019, Defendant, through Human Resources Manager 1, terminated Ms. Townsend's employment.

82. The practices complained of above are unlawful and in violation of the ADA.

83. The practices complained of above have deprived Ms. Townsend of equal employment opportunities and have otherwise adversely affected her status as an employee because of her engagement in protected activity.

84. The practices complained of above were intentional.

85. The practices complained of above were conducted with malice or with reckless indifference to the federally protected rights of Ms. Townsend.

86. The practices complained of above have deprived Ms. Townsend of equal employment opportunities and have otherwise adversely affected her status as an employee because of her engagement in protected activity.

87. As a direct and proximate result of Defendant's violation of the ADA, Ms. Townsend suffered actual damages including but not limited to back pay, front pay, losses in

compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with Defendant, from discriminating against individuals because of their disabilities, including discrimination in hiring, firing, failing to provide reasonable accommodation to qualified individuals with disabilities, and any other employment practice which discriminates on the basis of disability in violation of the ADA or for opposing such unlawful employment practices;

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of past and present unlawful employment practices.

C. Order Defendant to make Ikia Townsend whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay.

D. Order Defendant to make Ikia Townsend whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices describe above, in amounts to be determined at trial.

E. Order Defendant to make Ikia Townsend whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

F.      Order Defendant to pay to Ikia Townsend punitive damages for its willful, malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this 30th day of June, 2022.

                                      U.S. EQUAL EMPLOYMENT
                                      OPPORTUNITY COMMISSION

                                      GWENDOLYN YOUNG REAMS
                                      Acting General Counsel
                                      EQUAL EMPLOYMENT OPPORTUNITY
                                      COMMISSION
                                      131 M Street, NE
                                      Washington, D.C. 20507

                                      CHRISTOPHER LAGE
                                      Deputy General Counsel

                                      MELINDA C. DUGAS
                                      Regional Attorney

                                      ZOË G. MAHOOD
                                      Acting Supervisory Trial Attorney

                                      <u>/s/ Samuel H. Williams</u>
                                      SAMUEL H. WILLIAMS
                                      Trial Attorney
                                      EQUAL EMPLOYMENT OPPORTUNITY
                                      COMMISSION
                                      434 Fayetteville St., Suite 700
                                      Raleigh, NC 27601
                                      Phone:  (984) 275-4820
                                      Email:  Samuel.Williams@eeoc.gov

/s/Yolanda Warren Brock
YOLANDA WARREN BROCK
Trial Attorney
EQUAL EMPLOYMENT OPPORUNITY
COMMISSION
129 W. Trade Street, Suite 400
Charlotte, N.C. 28201
Phone: (980) 296-1281
Email: Yolanda.Brock@eeoc.gov